QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Harry A. Olivar, Jr. (Bar No. 143089)
   harryolivar@quinnemanuel.com
   David Elihu (Bar No. 303043)
   davidelihu@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:      (213) 443-3000
Facsimile:      (213) 443-3100

*Attorneys for Defendant*
*Fetch Media, Ltd.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| UBER TECHNOLOGIES, INC., | CASE NO. 4:17-cv-05393-YGR |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6) AND 9(B)** |
| vs. | |
| FETCH MEDIA, LTD., | Judge:    The Hon. Yvonne Gonzalez Rogers |
| Defendant. | Hearing Date:   February 6, 2018<br>Hearing Time:   2:00 p.m.<br>Courtroom:      Courtroom 1, 4th Floor |
| | Trial Date:      None Set |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

ALLEGATIONS OF THE COMPLAINT ..........................................................................3

      A.    Uber's and Fetch's Contract for Mobile Advertising Services ...................................3

      B.    Uber's and Fetch's Work Together to Limit and Remedy Ad Fraud........................4

      C.    Uber's Decision to Withhold Payment Owed and Eventually to Concoct the Claims Set Forth in the Complaint .................................................5

LEGAL STANDARD .........................................................................................................5

ARGUMENT .......................................................................................................................6

I.      UBER CANNOT PROPERLY CONVERT A CONTRACT CLAIM INTO NINE OTHER CAUSES OF ACTION ...........................................................6

II.     EACH OF UBER'S CLAIMS OTHER THAN BREACH OF CONTRACT HAS INCURABLE FLAWS AND MUST BE DISMISSED ........................................7

      A.    Uber's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed Because It Is Duplicative of the Breach of Contract Claim ...................................................7

      B.    Uber's Claims for Intentional Breach of Fiduciary Duty and Constructive Fraud Should Be Dismissed Because Uber Has No Basis to Assert an Extra-contractual Fiduciary Duty on the Part of Fetch to Prevent Others' Ad Fraud.........8

      C.    Uber's Fraud-Based Claims Should All Be Dismissed...........................................12

      D.    Uber's Ordinary Negligence and Professional Negligence Claims Should Be Dismissed Because There Is No Independent Tort Law Duty Supporting These Claims.................................................17

      E.    Uber's Unfair Competition Claim Should Be Dismissed ........................................19

      F.    An Unjust Enrichment Claim Is Not Available Where an Express Agreement Covers the Parties' Relationship ...................................................21

III.    LEAVE TO AMEND THE NON-CONTRACT CLAIMS WOULD BE FUTILE.............22

CONCLUSION ...................................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Aas v. Superior Court*,
    24 Cal. 4th 627 (2000) ................................................................................................................ 6

*Albillo v. Intermodal Container Servs., Inc.*,
    114 Cal. App. 4th 190 (2003) ............................................................................................... 2, 19

*Albrecht v. Lund*,
    845 F.2d 193 (9th Cir. 1988) ..................................................................................................... 22

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) ................................................................................................................ 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................... 5

*Assilzadeh v. California Fed. Bank*,
    82 Cal. App. 4th 399 (2000) ..................................................................................................... 12

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015) ..................................................................................................... 22

*Ayat v. Societe Air France*,
    No. C 06-01574JSW, 2007 WL 1100315 (N.D. Cal. Apr. 11, 2007) ....................................... 14

*Baner v. Wells Fargo Bank*,
    No. C-12-01189 EDL, 2012 WL 12921074 (N.D. Cal. July 23, 2012) .................................... 13

*Barber v. State of Hawai'i*,
    42 F.3d 1185 (9th Cir. 1994) ..................................................................................................... 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................................... 5

*Belton v. Comcast Cable Holdings, LLC*,
    151 Cal. App. 4th 1224 (2007) ............................................................................................. 2, 20

*Berryman v. Merit Prop. Mgmt., Inc.*,
    152 Cal. App. 4th 1544 (2007) ................................................................................................. 19

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
    685 F. Supp. 2d 1094 (E.D. Cal. 2010) .................................................................................... 19

*Bouncing Angels, Inc. v. Burlington Ins. Co.*,
    No. EDCV170015JGBSPX, 2017 WL 1294004 (C.D. Cal. Mar. 20, 2017) ............................ 14

*Bridge v. E*Trade Sec. LLC*,
    No. C-11-2521 EMC, 2011 WL 5444266 (N.D. Cal. Nov. 9, 2011) ........................................ 14

*Buller v. Sutter Health*,
  160 Cal. App. 4th 981 (2008) ............................................................................ 2, 20

*Cadlo v. Owens-Illinois, Inc.*,
  125 Cal. App. 4th 513 (2004) ................................................................................. 14

*California Shoppers, Inc. v. Royal Globe Ins. Co.*,
  175 Cal. App. 3d 1 (1985) ......................................................................................... 6

*Campbell v. eBay, Inc.*,
  No. 13-CV-2632 YGR, 2013 WL 4764526 (N.D. Cal. Sept. 5, 2013) ...................... 8

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990) .................................................................................. 7

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ............................................................................................ 19

*City of Hope Nat. Med. Ctr. v. Genentech, Inc.*,
  43 Cal. 4th 375 (2008) .............................................................................................. 9

*Comm. Children's Television, Inc. v. Gen. Foods Corp.*,
  35 Cal. 3d 197 (1983) .............................................................................................. 11

*Daniel v. Wayans*,
  8 Cal. App. 5th 367 (2017) ................................................................................. 2, 22

*David Welch Co. v. Erskine & Tulley*,
  203 Cal. App. 3d 884 (1988) .................................................................................... 8

*Doctors Med. Ctr. of Modesto v. Glob. Excel Mgmt., Inc.*,
  No. 1:08-CV-01231, 2009 WL 2500546 (E.D. Cal. Aug. 14, 2009) ......................... 9

*Edelman v. Bank of America Corp.*,
  2009 WL 1285858 (CD. Cal. Apr. 17, 2009) .......................................................... 21

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................... 20

*Erlich v. Menezes*,
  21 Cal. 4th 543 (1999) ...................................................................................... 17, 18

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) ................................................................................... 5

*Fitzpatrick v. Fitzpatrick*,
  2013 WL 4678879 (E.D. Cal. Aug. 30, 2013) ......................................................... 8

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
  11 Cal. 4th 85 (1995) ................................................................................................ 6

*Garcia v. Wells Fargo Bank, N.A.*,
  No. CV 14-09821, 2015 WL 3742815 (C.D. Cal. June 15, 2015) ............................ 3

*Glenn K. Jackson Inc. v. Roe*,
 273 F.3d 1192 (9th Cir. 2001) ............................................................................ 15, 16

*Graebner v. James*,
 No. C 12-01694 WHA, 2012 WL 6156729 (N.D. Cal. Dec. 11, 2012) .................................... 9

*Guido v. Koopman*,
 1 Cal. App. 4th 837 (1991) ....................................................................................... 16

*Hadley v. Kellogg Sales Co.*,
 243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................................ 21

*Harris v. Atl. Richfield Co.*,
 14 Cal. App. 4th 70 (1993) ....................................................................................... 18

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
 41 Cal. App. 4th 1410 (1996) ..................................................................................... 21

*Heighley v. J.C. Penney Life Ins. Co.*,
 257 F. Supp. 2d 1241 (C.D. Cal. 2003) ............................................................................ 21

*Hill v. Roll Int'l Corp.*,
 195 Cal. App. 4th 1295 (2011) ..................................................................................... 22

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ..................................................................................... 13

*Kissling v. Wyndham Vacation Resorts, Inc.*,
 No. 15-CV-04004-EMC, 2015 WL 7283038 (N.D. Cal. Nov. 18, 2015) ................................... 11

*Klein v. Chevron U.S.A., Inc.*,
 202 Cal. App. 4th 1342 (2012) ..................................................................................... 21

*Lavie v. Procter & Gamble Co.*,
 105 Cal. App. 4th 496 (2003) ..................................................................................... 21

*Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc.*,
 233 Cal. App. 4th 803 (2015) ......................................................................................... 8

*Lucero v. Am. Home Mortg.*,
 No. C 09-02879 CRB, 2011 WL 996659 (N.D. Cal. Mar. 21, 2011) ...................................... 13

*McGehee v. Coe Newnes/McGehee ULC*,
 No. C 03-5145 MJJ, 2004 WL 2496127 (N.D. Cal. Nov. 4, 2004) ......................................... 8

*McMurray v. Merck & Co.*,
 Case No. 071007, 2007 WL 1456042 (N.D. Cal. May 17, 2007) ........................................... 14

*Motors, Inc. v. Times Mirror Co.*,
 102 Cal. App. 3d 735 (1980) ......................................................................................... 20

*Nasseri v. Wells Fargo Bank, N.A.*,
 147 F. Supp. 3d 937 (N.D. Cal. 2015) ............................................................................... 6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   319 F. Supp. 2d 1059 (C.D. Cal. 2003) ............................................................... 19

*Neal v. Select Portfolio Servicing, Inc.*,
   No. 5:16-cv-04923-EJD, 2017 WL 4224871 (N.D. Cal. Sept. 22, 2017) ................................ 21

*Noll v. eBay, Inc.*,
   282 F.R.D. 462 (N.D. Cal. 2012) ....................................................................... 16

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................. 14

*Oracle USA, Inc. v. XL Glob. Servs., Inc.*,
   2009 WL 2084154 (N.D. Cal. July 13, 2009) ........................................................... 18

*Ostayan v. Serrano Reconveyance Co.*,
   77 Cal. App. 4th 1411 (2000) ......................................................................... 17

*Parrish v. Nat'l Football League Players Ass'n*,
   534 F. Supp. 2d 1081 (N.D. Cal. 2007) ................................................................ 10

*Paskenta Band of Nomlaki Indians v. Crosby*,
   122 F. Supp. 3d 982 (E.D. Cal. 2015) .................................................................. 11

*Power Quality & Elec. Sys., Inc. v. BP W. Coast Prod. LLC*,
   No. 16-CV-04791 YGR, 2016 WL 6524408 (N.D. Cal. Nov. 3, 2016) ...................................... 6

*Racine & Laramie, Ltd. v. Cal. Dept. of Parks & Recreation*,
   11 Cal. App. 4th 1026 (1993) .......................................................................... 7

*Rhynes v. Stryker Corp.*,
   No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ............................................ 14

*Richelle L. v. Roman Catholic Archbishop*,
   106 Cal. App. 4th 257 (2003) ......................................................................... 10

*Rickel v. Schwinn Bicycle Co.*,
   144 Cal. App. 3d 648 (1983) ........................................................................... 8

*Sacramento E.D.M., Inc. v. Hynes Aviation Industries, Inc.*,
   965 F. Supp. 2d 1141 (E.D. Cal. 2013) ............................................................. 5, 12

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ........................................................................ 22

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) .................................................................... 19, 21

*Swearingen v. Santa Cruz Nat'l, Inc.*,
   No. 13-cv-04291-SI, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) ....................................... 22

*Tan v. GrubHub, Inc.*,
   171 F. Supp. 3d 998 (N.D. Cal. 2016) ................................................................. 20

*Tarmann v. State Farm Mutual Auto Ins. Co.*,
 2 Cal. App. 4th 153 (1991) ................................................................................................ 6

*Thibodeaux v. Teamsters Local 853*,
 2017 WL 2774365 (N.D. Cal. June 26, 2017) .................................................................. 5

*TreeFrog Developments, Inc. v. Seidio, Inc.*,
 No. 13CV0158-IEG KSC, 2013 WL 4028096 (S.D. Cal. Aug. 6, 2013) ............................ 19

*Tsai v. Wang*,
 No. 17-CV-00614-DMR, 2017 WL 2587929 (N.D. Cal. June 14, 2017) ............................ 15

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
 117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................................ 16

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
 660 F. Supp. 2d 1163 (C.D. Cal. 2009) ....................................................................... 6, 22

*US Distressed Mortg. Fund, LLC v. Wells Fargo Bank, N.A.*,
 No. C 13-05177-LB, 2014 WL 4370810 (N.D. Cal. Sept. 3, 2014) .................................... 14

*Valencia v. Wells Fargo Home Mortg. Inc.*,
 No. C 14-3354 CW, 2014 WL 5812578 (N.D. Cal. Nov. 7, 2014) .................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ................................................................................ 2, 6, 21

*W. Min. Council v. Watt*,
 643 F.2d 618 (9th Cir. 1981) .............................................................................................. 5

*Wilhelm v. Pray, Price, Williams & Russell*,
 186 Cal. App. 3d 1324 (Cal. Ct. App. 1986) ............................................................... 15, 16

*Williamson v. McAfee, Inc.*,
 No. 5:14-CV-00158-EJD, 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ........................ 16

*Wolf v. Superior Court*,
 107 Cal. App. 4th 25 (2003) ......................................................................... 2, 8, 10, 11

*World Surveillance Group. Inc. v. La Jolla Cove Investors*,
 66 F. Supp. 3d 1233 (N.D. Cal. 2014) .............................................................................. 11

*Yates v. Aurora Loan Servs., LLC*,
 No. C-11-00695 EDL, 2011 WL 2429376 (N.D. Cal. June 13, 2011) .............................. 14

*Yi v. Circle K Stores, Inc.*,
 258 F. Supp. 3d 1075 (C.D. Cal. 2017) ............................................................................ 20

*Younan v. Equifax Inc.*,
 111 Cal. App. 3d 498 (1980) ............................................................................................ 12

*Zepeda v. PayPal, Inc.*,
 777 F. Supp. 2d 1215 (N.D. Cal. 2011) .............................................................................. 8

## <u>Statutory Authorities</u>

Cal. Bus. & Prof. Code §§ 17200, et seq ...................................................... 5, 19, 20, 21

Cal. Civ. Proc. Code § 3294(b) ......................................................................... 14

## <u>Rules and Regulations</u>

Fed. R. Civ. P. 9(b) ....................................................................................... 1, 5, 12

Fed. R. Civ. P. 10(c) ................................................................................................ 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on February 8, 2017 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1, located on the 4th floor of the Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, Defendant Fetch Media Ltd. ("Fetch"), will and hereby does move the Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss the Second through Tenth Causes of Action of the Complaint filed by Plaintiff Uber Technologies, Inc. ("Uber").

This motion is supported by this Notice of Motion, the following Memorandum of Points and Authorities, the pleadings on file in this action, and any further evidence or argument that the Court may properly receive at or before the hearing on this matter.

## INTRODUCTION

This action was filed by a faithless business partner, which seeks to avoid paying its bills by filing ten scattershot claims against an advertising agency with a flawless reputation that has never, in its nine-year history, been in litigation with a client. It began with a two-year period of cooperative work between Uber and Fetch, which included major Fetch advertising successes that obtained millions of riders for Uber, collaborative efforts to combat advertising fraud, and the highest accolades from Uber for Fetch's work. Then a new team at Uber took charge of the relationship, bristled at paying Fetch's bills, and acted as if Uber had no prior knowledge of advertising fraud. Out of the blue, Uber claimed that Fetch had a duty to prevent fraud across the board with all 57 of its advertising suppliers, almost all of which are small businesses. Uber has now taken its fictitious story to federal court and, to avoid paying the over $19 million it owes to dozens of these suppliers, has concocted claims against Fetch that it maintains are worth $50 million.

Uber's breach of contract claim against Fetch will fail when the court has an opportunity to review the evidence. There is no provision in the contract that requires Fetch to police ad fraud across suppliers, and the evidence will show that neither party had any notion that this was Fetch's obligation nor that Fetch was responsible for the supposed fraud Uber references. Fetch is not moving to dismiss the contract claim (yet). Rather, by this motion, it asks the Court to dismiss at the pleading stage the nine other theories Uber has tried to assert. As one might expect in a situation where detailed contracts and statements of work governed the parties' relationship, each of these other, non-

contract theories is inadequately alleged and should be dismissed:

- The claim for breach of the implied covenant of good faith and fair dealing falls within the terms of the parties' contract, and is subsumed by the contract claim. *See Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 943 (N.D. Cal. 2015).

- Uber cannot establish that Fetch had any fiduciary duty to prevent or eliminate ad fraud by non-party suppliers, which requires dismissal of Uber's claims for intentional breach of fiduciary duty and constructive fraud. *See Wolf v. Superior Court*, 107 Cal. App. 4th 25, 30 (2003).

- Uber's three fraud-based claims–fraud, constructive fraud, and negligent misrepresentation– cannot be pleaded with the required particularity, as all of them are based on vague assurances of contractual performance that Uber improperly attempts to advance as actionable misstatements. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

- The claims for negligence and professional negligence should be dismissed because there is no tort duty independent of contract that could support these claims. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law.").

- The unfair competition claim fails to satisfy any of the categories of conduct that must be alleged – Uber's contractual gripes do not implicate a legislatively declared policy, do not threaten competition, do not allege a statutory violation, and do not adequately allege that consumers were likely deceived. *See Buller v. Sutter Health*, 160 Cal. App. 4th 981, 991 (2008) (citing *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239-40 (2007)); *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003).

- Unjust enrichment is not available to Uber, because Uber has not (and cannot) alleged that the express contract between the parties is void or rescinded. *See Daniel v. Wayans*, 8 Cal. App. 5th 367, 399 (2017).

Uber's attempt to convert a contract claim into a hyper-aggressive salvo of facially flawed tort theories should be curtailed at the pleading stage. Fetch urges the Court to grant its motion in its

1    entirety.

2    ## ALLEGATIONS OF THE COMPLAINT

3    ### A.    Uber's and Fetch's Contract for Mobile Advertising Services

4    Uber concedes it "relies on mobile advertising to gain new riders and drivers," Complaint ¶

5    13, and Uber retained a premier mobile advertising consultant when it entered into a Services

6    Agreement with Fetch.  Uber hired Fetch to arrange, for example, advertising by Uber on the

7    Instagram social network, which requested that prospective riders and drivers install the Uber App

8    from the Apple App Store or Google Play Store onto their mobile phones.

9    Fetch is a mobile advertising consultancy in the business to provide the best advertising advice

10   it can for its clients.  Fetch is not a provider or seller of advertising space.  Fetch helped Uber create

11   and execute a mobile advertising campaign pursuant to the Services Agreement and related statements

12   of work, amendments, and addenda entered into between the parties (together, the "Agreement").

13   Complaint ¶¶ 17, 20, 24-28.

14   In the course of Uber's advertising campaign, Fetch, acting at the direction of Uber, bought

15   mobile advertising space from 57 third-party advertising suppliers.  *See* Complaint ¶¶ 29, 78.  Fetch

16   arranged for Uber's advertisements to appear on mobile advertising spaces, then passed back the cost

17   of purchasing the space to Uber.  Complaint ¶¶ 29, 33-35.

18   The relationship between Uber and Fetch was governed by contractual terms dictating the

19   planning and execution of the campaign, the provision of data performance metrics to Uber, the

20   services to be provided, and performance reporting and reviews.  Complaint ¶¶ 24-27, Exs. E, § 4, C

21   §§ 2, 3, 8, D §§ 2, 3, 8, and F §§ 2, 3, 8.[1]  Uber alleges that in certain jurisdictions, namely United

22   States, Mexico, France, the Philippines, Romania, and Singapore, Fetch acted as Uber's agent and

23   "purchased mobile inventory on behalf of Uber and its affiliates."  Complaint ¶¶ 29-30.  In other

24   jurisdictions, Uber contends that Fetch "purchased mobile inventory on a 'principal transaction'

25

26   ――――――――――――――――
     [1]  The documents attached to Uber's complaint may all be considered by the Court on this motion.
27   Fed. R. Civ. P. 10(c); *Garcia v. Wells Fargo Bank, N.A.*, No. CV 14-09821, 2015 WL 3742815, at *2
     (C.D. Cal. June 15, 2015) ("It is well-established that documents attached as exhibits to a complaint
28   are part of the complaint, and may be considered on a motion to dismiss.").

1   basis—Fetch purchased mobile inventory from networks and publishers on its own behalf and then

2   resold that mobile inventory to Uber."  Complaint ¶ 31.

3          The Agreement limits damages, including damages for loss or inaccuracy of data of any kind.

4   Complaint, Ex. A § 9.2.  Nowhere does the Agreement impose on Fetch the obligation to police the

5   advertising of Uber's 57 advertising suppliers or otherwise prevent so-called ad fraud.

6          **B.**        **Uber's and Fetch's Work Together to Limit and Remedy Ad Fraud**

7          The campaign ran pursuant to the Agreement from 2015 through the first part of 2017.  *See*

8   Complaint ¶¶ 24-26.

9          During the campaign, at Uber's direction, tracking and performance data for the mobile

10  advertising was gathered by a third party mobile analytics company called TUNE, Inc., and suppliers

11  also self-reported such data to Fetch and Uber directly.  Complaint ¶¶ 42, 44.  Fetch compiled the

12  data, as reported by third parties, and provided it to Uber.  Complaint ¶ 60.  For example, Fetch

13  aggregated the data into "transparency reports."  Complaint ¶ 46.  These data reports were provided to

14  Uber as they were created, on an ongoing basis, so that Uber could evaluate the campaign.  *Id.*  Fetch

15  also watched and analyzed the suppliers' data, and recommended that Uber not purchase media from

16  certain networks "due to concerns about efficiency and traffic quality for those entities."  Complaint

17  ¶¶ 58, 60.

18         One of the concerns that Uber and Fetch were aware of, and worked to assess, was "ad fraud"

19  – for example, situations where networks or publishers claim credit for installations actually

20  attributable to other media sources, or otherwise not the result of actual clicks on their advertising.

21  Complaint ¶ 52; *see also id.* ¶¶ 51, 53, 54.  To help Uber monitor ad fraud, Fetch implemented new

22  tracking metrics and made efforts to identify re-brokered traffic and malicious redirects.  Complaint ¶¶

23  61-62.  If a suppliers' data was suspicious or otherwise out of the ordinary, Fetch recommended that

24  Uber avoid purchasing media from that supplier, to be safe.  Complaint ¶ 58.  Throughout the

25  campaign, Uber was aware of, and itself identified, both the possibility of ad fraud and ad-fraud issues

26  with inventory from the 57 third party suppliers.  Complaint ¶¶ 58-60, 63.

27

28

### C.   Uber's Decision to Withhold Payment Owed and Eventually to Concoct the Claims Set Forth in the Complaint

Earlier this year, after new personnel from Uber became involved with the Fetch account, Uber suddenly began to withhold payments owed to Fetch and/or third party suppliers under the Agreement. Complaint ¶¶ 72, 80.  The amount withheld by Uber exceeds $19 million.

Uber alleges that it suspended the "entire Fetch Campaign in March 2017," Complaint ¶ 73, but the reality is Uber continued to ask Fetch to do work until Fetch was forced to terminate its work based on Uber's nonpayment.

After efforts to resolve the dispute went nowhere, Uber filed the Complaint in this action on September 18, 2017.  Uber attempts to assert ten causes of action arising from Fetch's work under the mobile media campaign Agreement: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) intentional breach of fiduciary duty; (4) constructive fraud; (5) fraud; (6) negligent misrepresentation; (7) professional negligence; (8) negligence; (9) unfair competition under Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (10) unjust enrichment.  Complaint ¶¶ 82-148.  Fetch hereby moves to dismiss every claim other than the contract claim.

### LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is insufficient if it presents "'naked assertion[s]' devoid of 'further factual enhancement"; a "formulaic recitation of the elements of a cause of action will not do."  *Id*.  "Although factual allegations are taken as true, [courts] do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Courts need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Thibodeaux v. Teamsters Local 853*, 2017 WL 2774365, at *4 (N.D. Cal. June 26, 2017).

The heightened pleading standard of Federal Rule 9(b) applies to claims that involve fraud, constructive fraud, and misrepresentation.  Fed. R. Civ. P. 9(b); *Sacramento E.D.M., Inc. v. Hynes*

*Aviation Industries, Inc.*, 965 F. Supp. 2d 1141, 1151 (E.D. Cal. 2013) (fraud and constructive fraud); *Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 945 (N.D. Cal. 2015) (negligent misrepresentation). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The pleading requirements are stricter when fraud is alleged to have been committed by a business entity: "'The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Power Quality & Elec. Sys., Inc. v. BP W. Coast Prod. LLC*, No. 16-CV-04791 YGR, 2016 WL 6524408, at *8 (N.D. Cal. Nov. 3, 2016) (Rogers, J.) (citing *Tarmann v. State Farm Mutual Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)).

## ARGUMENT

## I.   UBER CANNOT PROPERLY CONVERT A CONTRACT CLAIM INTO NINE OTHER CAUSES OF ACTION

Uber's Complaint asserts a contract claim based on a theory not supported by the Agreement (or any of the parties' discussions or dealings)– that Fetch had an unstated obligation to Uber to prevent ad fraud on the part of each of the 57 other entities that supplied Uber mobile advertising. Uber then takes the allegations underpinning its breach of contract claim and seeks to recast them as nine additional non-contract (largely tort) causes of action. A contract claim, however, cannot properly be transformed into tort and other theories, and each of the nine other causes of action (Counts Two through Ten) should be dismissed.

Because the other nine causes of action are subsumed by the breach of contract claim, they should be dismissed at the pleading stage. *See Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 943 (N.D. Cal. 2015) (dismissing covenant of good faith and fair dealing claim as duplicative of and "subsumed under [the] breach of contract claim"); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.") (quoting *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000)); *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th

85, 98 (1995) ("The restrictions on contract remedies . . . protect the parties' freedom to bargain over special risks and they promote contract formation by limiting liability to the value of the promise. . . . [T]he California Supreme Court has proceeded with caution in carving out exceptions to the traditional contract remedy restrictions.").

## II.   EACH OF UBER'S CLAIMS OTHER THAN BREACH OF CONTRACT HAS INCURABLE FLAWS AND MUST BE DISMISSED

### A.   Uber's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed Because It Is Duplicative of the Breach of Contract Claim

Uber's implied covenant of good faith and fair dealing claim is a mirror-image of its contract claim and should be dismissed.  *Compare* Complaint ¶¶ 83-87 *with id.* ¶ 93.  The implied covenant of good faith and fair dealing is not a viable cause of action where all the plaintiff has alleged is a violation of what it contends are contract terms.  *See California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54 (1985) ("[T]he authorities hold that breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself."); *Racine & Laramie, Ltd. v. Cal. Dept. of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031(1993) ("[T]he covenant is implied as a *supplement* to the express contractual covenants"); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (dismissing implied covenant of good faith and faith dealing claim as "superfluous" where "allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action").

For example, in paragraphs 86 and 87 of the Complaint, Uber alleges that Fetch breached the Agreement by "failing to prevent and remediate fraud," "failing to disclose conflicts of interest and failing to pass back to Uber volume rebates, commissions, or discounts."  In paragraph 93 of the Complaint, Uber makes the parallel allegation that Fetch "breached the covenant of good faith . . . by . . . failing to prevent and remediate fraud," "failing to disclose conflicts of interest," and "failing to pass back to Uber volume rebates, commissions, or discounts."  Whatever the ultimate merit of Uber's contract claim, it cannot base a breach of covenant of good faith claim on identical facts.

Only one factual allegation in Uber's breach of the covenant of good faith and fair dealing

claim is not explicitly addressed in its breach of contract claim:  an alleged failure by Fetch to stop re-brokering of mobile inventory (or, in other words, where networks take advertising inventory and resell them to third parties).  Complaint ¶¶ 77, 93.  But other parts of Uber's Complaint reveal that this is part of the allegation that Fetch failed to prevent and remediate fraud, which is the essence of the contract claim.  *See* Complaint ¶ 62 (noting that "efforts to identify re-brokered traffic" are part of "assist[ing] in fraud detection").

Uber's second cause of action should thus be  dismissed as duplicative of the contract claim. *See Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011) (dismissing breach of implied covenant of good faith and fair dealing claim because the allegations did not "go beyond the statement of a mere contract breach").

## B.   Uber's Claims for Intentional Breach of Fiduciary Duty and Constructive Fraud Should Be Dismissed Because Uber Has No Basis to Assert an Extra-contractual Fiduciary Duty on the Part of Fetch to Prevent Others' Ad Fraud

To maintain its claim for intentional breach of fiduciary duty, Uber must alleged the requisite duty, which it fails to do here.  *David Welch Co. v. Erskine & Tulley*, 203 Cal. App. 3d 884, 890 (1988) ("With respect to a cause of action alleging breach of a fiduciary duty, the existence of the duty is a question of law.").  "It is well-settled that parties to a contract do not by necessary implication become fiduciaries."  *McGehee v. Coe Newnes/McGehee ULC*, No. C 03-5145 MJJ, 2004 WL 2496127, at *4 (N.D. Cal. Nov. 4, 2004); *Rickel v. Schwinn Bicycle Co.*, 144 Cal. App. 3d 648, 654 (1983) ("[P]arties to a contract, by that fact alone, have no fiduciary duties toward one another.").

To survive a motion to dismiss, a plaintiff alleging an intentional breach of a fiduciary duty must properly plead a traditionally recognized fiduciary relationship or "fiduciary-like" relationship. *See Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 832 (2015); *see also Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003).  Vague, conclusory allegations that a fiduciary relationship exists are insufficient. *Campbell v. eBay, Inc.*, No. 13-CV-2632 YGR, 2013 WL 4764526, at *4 (N.D. Cal. Sept. 5, 2013) (Rodgers, J.) ("Mere conclusory allegations . . . will not suffice" to withstand a motion to dismiss.).   Uber cannot allege the existence of a fiduciary relationship (a requirement to prevent all ad fraud) on which it seeks to rely here.

1           **1.**      <u>**Uber has no basis to allege that a traditional fiduciary relationship to**</u>

2                                <u>**prevent ad fraud exists**</u>

3       Traditionally recognized fiduciary duties include legal relationships such as "guardian and

4 ward, trustee and beneficiary, principal and agent, or attorney and client." *Fitzpatrick v. Fitzpatrick*,

5 2013 WL 4678879, at *6 (E.D. Cal. Aug. 30, 2013); *see also City of Hope Nat. Med. Ctr. v.*

6 *Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008). Merely alleging an agency relationship to procure

7 mobile advertising is not enough. To defeat a motion to dismiss, Uber must allege that the alleged

8 acts (i.e., failure to prevent ad fraud with 57 suppliers) are within the scope of the agency relationship.

9 *Doctors Med. Ctr. of Modesto v. Glob. Excel Mgmt., Inc.*, No. 1:08-CV-01231, 2009 WL 2500546, at

10 *5 (E.D. Cal. Aug. 14, 2009) ("[A]n agent is a fiduciary with respect to matters within the scope of the

11 agency.").

12       In its Complaint, Uber alleges an agent-principal relationship for certain jurisdictions in which

13 Uber contends Fetch acted as an agent. Complaint ¶ 96 (United States, Mexico, France, the

14 Philippines, Romania, and Singapore). However, Uber has alleged no facts showing that an alleged

15 failure to prevent ad fraud by others fell within the limited scope of this agency relationship. Uber has

16 not alleged and cannot allege facts showing Fetch took on a fiduciary duty as agent to identify and

17 correct advertising fraud from 57 third-party suppliers. Complaint ¶ 98. This is not supported by the

18 contracts; the Agreement clarifies that ███████████████████████████. For

19 example, Section 4.1 of the Agreement explains that ████████████████████████

20 ████████████████████ Complaint, Ex. A § 4.1. Clause 11.13 provides:

21 ████████████████████████████

22 ████████████████████████████

23 ████████████████████████████

24 ████████ . . .

25 Complaint, Ex. A § 11.13. Uber's theory that Fetch took on a duty to police all ad fraud does not fall

26 within the ████████████████████. *Graebner v. James*, No. C 12-01694 WHA,

27 2012 WL 6156729, at *3 (N.D. Cal. Dec. 11, 2012) (dismissing breach of fiduciary duty claim based

28 on alleged agency relationship because "Plaintiffs have not pled facts that support an inference that

1  [defendant's] roles as an attorney and financial advisor to plaintiffs was within the scope of the agency

2  relationship.").

3      Uber's fiduciary duty claim should be dismissed to the extent it is based on an alleged agency

4  relationship between the parties.

5          ### 2.     Uber has not plausibly alleged a fiduciary-like relationship

6      Uber also has no basis to assert that a fiduciary-like duty applied.  Uber alleges that Fetch

7  breached a fiduciary duty by not catching and remedying all advertising fraud by 57 third-party

8  suppliers that advertised for Uber.  Complaint ¶ 98.  But the law and contract do not impose such a

9  vast and extreme fiduciary duty upon Fetch.  Fiduciary-like duties can typically be shown only where

10 (a) the plaintiff placed total trust and confidence in the defendant's discretion, (b) the parties dealt on

11 unequal terms, or (c) the defendant was in a position to take advantage of the plaintiff without the

12 plaintiff's knowledge or consent.  *See e.g., Wolf*, 107 Cal. App. 4th at 29; *Richelle L. v. Roman*

13 *Catholic Archbishop*, 106 Cal. App. 4th 257, 271 (2003).  As explained by the California Court of

14 Appeal, "[t]he essence of a fiduciary or confidential relationship is that the parties do not deal on

15 equal terms, because the person in whom trust and confidence is reposed and who accepts that trust

16 and confidence is in a superior position to exert unique influence over the dependent party."  In such

17 situations, "the party in whom trust and confidence is reposed . . . can take no advantage from his acts

18 relating to the interest of the other party without the latter's knowledge or consent."  *Id.* at 270.  None

19 of these hallmarks of a fiduciary-like duty can be alleged here.

20     Instead, Uber admits that the parties mutually "utilized a third party mobile analytics and

21 performance marketing platform" in an effort to track fraud, and had equal access to the same

22 information.[2]  Complaint ¶¶ 42-49, 60.  Uber also admits that in several instances, Uber, not Fetch,

23 identified potential ad fraud, negating any theory that Uber fully delegated the duty to monitor ad

24 fraud to Fetch. Complaint ¶¶ 63, 72.  Given the Complaint's allegations, the relationship between

25 Uber and Fetch cannot fairly be described as one where Uber fully delegated to Fetch the duty of

26 _____

27      [2]  Even then, "[m]ere difference in . . . access to information is not sufficient to show vulnerability
   to establish a fiduciary relationship."  *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d
28 1081, 1098 (N.D. Cal. 2007) (dismissing fiduciary duty cause of action).

1   monitoring fraud on Uber's advertisements.  *Wolf*, 107 Cal. App. 4th at 30 (dismissing plaintiff's

2   breach of fiduciary duty claim in part because plaintiff must allege more than just "trust and

3   confidence" put in the other party in performing the parties' contract); *Paskenta Band of Nomlaki*

4   *Indians v. Crosby*, 122 F. Supp. 3d 982, 994 (E.D. Cal. 2015) (finding that the pleadings insufficiently

5   alleged a fiduciary duty was owed when the plaintiff pled that the defendant – who was in charge of

6   administering the plaintiff's pension plans – performed discretionary actions, was relied on by the

7   plaintiff to make the plans compliant, and made investment choices with the defendant's funds).

8        Tellingly, the Complaint alleges that Fetch was not an agent in any respect in countries other

9   than the United States, Mexico, France, the Philippines, Romania, and Singapore.  For those countries

10  where Fetch is not alleged to have acted as agent, the relationship was that of a buyer and seller:

11             31. For mobile advertising conducted in jurisdictions other than those
               referenced in the prior paragraph, Fetch purchased mobile inventory on
12             a "principal transaction" basis—*Fetch purchased mobile inventory*
               *from networks and publishers on its own behalf and then resold that*
13             *mobile inventory to Uber*.

14  Complaint ¶ 31 (emphasis added).  As a matter of law, this arms-length contractual relationship cannot

15  be the basis of a fiduciary duty owed by Fetch.  *Kissling v. Wyndham Vacation Resorts, Inc.*, No. 15-

16  CV-04004-EMC, 2015 WL 7283038, at *6 (N.D. Cal. Nov. 18, 2015) (arms-length contractual terms

17  and alleged misrepresentations were insufficient to demonstrate the existence of a fiduciary or

18  confidential relationship); *see also Comm. Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d

19  197, 222 (1983) ("The relationship of seller to buyer is not one ordinarily vested with fiduciary

20  obligation, even though sellers routinely make representations concerning their product, often on the

21  basis of a claimed expert knowledge about its utility and value.").

22       As explained in *World Surveillance Group. Inc. v. La Jolla Cove Investors*, 66 F. Supp. 3d

23  1233 (N.D. Cal. 2014), in dismissing a fiduciary duty claim, "[t]he obligation to put the interests of

24  the other party first is why a fiduciary relationship generally does not arise out of ordinary arms-length

25  business dealings. In a typical business contract or relationship, one party does not commit to act in

26  the other party's best interest rather than in its own." *Id.* at 1235 .  In that case, the court rejected

27  plaintiff's attempt to attach an array of extraordinary fiduciary duties to the defendant, noting that the

28  dealings between the parties arose from arms-length transactions, and plaintiff had presented no facts

showing that defendant knowingly undertook the duty of putting plaintiff's interests before its own. *Id.* at 1236.  Similarly here, Uber and Fetch had an arms-length arrangement under the Agreement, and Uber's Complaint can allege no plausible facts showing that Fetch knowingly undertook the exceptional duty to police any ad fraud by 57 other suppliers.

### 3. Uber's claim for constructive fraud should be dismissed because Uber has not plead a fiduciary duty with specificity

Uber's constructive fraud claim also fails both for the same reason as its claim for the intentional breach of fiduciary duty – it has not properly alleged facts showing a fiduciary duty whereby Fetch was responsible for identifying and eliminating ad fraud by others – and because Uber has failed to allege constructive fraud with particularity.

To sustain its constructive fraud claim, Uber must plead, with particularity, a fiduciary or confidential relationship.  *See Assilzadeh v. California Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000) ("Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship.").  Because Uber has not met this requirement, its constructive fraud claim must be dismissed for this additional reason.  *See Sacramento E.D.M., Inc.*, 965 F. Supp. 2d at 1151; *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 517 (1980) (absence of a particularly alleged fiduciary relationship between the parties meant that the plaintiff's claim for constructive fraud could not proceed).

### C. Uber's Fraud-Based Claims Should All Be Dismissed

Uber's three fraud-based claims–constructive fraud, fraud and negligent misrepresentation– should all be dismissed because Uber cannot coherently allege misrepresentations or reliance, and because Uber has failed to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires Uber to "state with particularity the circumstances constituting fraud or mistake," and Uber has not met this standard.

### 1. Uber has not identified statements that can support fraud-based causes of action

Uber has failed to plead an actionable misrepresentation underlying its fraud-based claims with particularity.  *See* Complaint ¶¶ 101-24.  Instead, Uber generally pleads vague commitments to

perform not attributable to anyone. *Lucero v. Am. Home Mortg.*, No. C 09-02879 CRB, 2011 WL 996659, at *3 (N.D. Cal. Mar. 21, 2011) (dismissing fraud claim where "the Complaint does not include the 'time, place, persons, statements made, explanation of why or how such statements are false or misleading.'").

As an initial matter, Uber's pleadings do not identify any specific, allegedly false statements made by Fetch. A plaintiff alleging fraud "must set forth *more* than the neutral facts necessary to identify the transaction." *Vess*, 317 F.3d at 1106. Uber does not allege that Fetch ever represented that services being provided by 57 publishers and networks would be fraud free (the parties discussed the opposite), or even that the level of ad fraud would not exceed a specified level. Uber's inability to plausibly allege such facts is fatal to its fraud claims. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (plaintiff did not meet the heightened pleading requirements for fraud claims when it alleged that misrepresentations were made through defendant's televised national marketing campaign, because plaintiff failed to "specify what the television advertisements or other sales material specifically stated."). Similarly, although Uber claims generally that Fetch "misrepresent[ed] the effectiveness of its mobile media strategy and media purchasing decisions," Uber fails to identify with particularity any allegedly false and actionable statement. Complaint ¶ 104.

Nor has Uber satisfied the even more exacting standard a plaintiff must meet where, as here, the defendant is a corporation. Uber's complaint fails to identify with respect to any alleged misrepresentation to Uber, "(1) the name or any other information that would identify the person to whom they spoke; (2) what, precisely, that person told them (verbally or in writing); or (3) the date (or dates) on which they spoke with that person." *Valencia v. Wells Fargo Home Mortg. Inc.*, No. C 14-3354 CW, 2014 WL 5812578, at *3 (N.D. Cal. Nov. 7, 2014). In fact, Uber has identified only one specific statement in its entire 32-page complaint, namely that "██████████████████ ████████████████████████████████████████ ██████████████" Complaint ¶ 58 & Ex. G. But Uber does not even allege that the statement was false when made, or that the person making the statement had authority to speak on Fetch's behalf. Uber's failure to satisfy the heightened standard for corporations requires dismissal of its fraud claims. *Baner v. Wells Fargo Bank*, No. C-12-01189 EDL, 2012 WL 12921074, at *9 (N.D.

Cal. July 23, 2012)("Plaintiff does not identify any person who supposedly made a statement concerning a loan commitment, much less their authority to speak, to whom they spoke, what they said or when. The Complaint is silent as the loan terms that were supposedly promised."); *Yates v. Aurora Loan Servs.*, LLC, No. C-11-00695 EDL, 2011 WL 2429376, at *7 (N.D. Cal. June 13, 2011) ("Plaintiffs have failed to allege any specific statements made by Defendant, let alone the 'who, what, when, where and how' of any statements to properly allege mistake of fact or fraud.").[3]

## 2. Uber cannot plead with specificity that Fetch's alleged representations about contractual performance were false at the time they were made

"[K]nowledge of the falsity of the misrepresentation, i.e., scienter" is a required element of a fraud claim, *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004), and Uber fails to allege this as to any statement.  Courts routinely dismiss fraud claims where the plaintiff has not alleged with specificity facts suggesting that the defendant knew alleged misstatements were false when made. *See Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964, 967, 974 n. 9 (N.D. Cal. 2008) (dismissing a

---

[3]   Relatedly, the Court must also dismiss Uber's claims for punitive damages, because Uber has failed to allege that Fetch as an entity "(a) had advance knowledge of the unfitness of the employee engaged in the oppressive, fraudulent or malicious conduct or employed [any] employee with a conscious disregard of the rights or safety of others or (b) authorized, or ratified [any] wrongful conduct . . ., or (c) was personally guilty of oppression, fraud, or malice."  *Bouncing Angels, Inc. v. Burlington Ins. Co.*, No. EDCV170015JGBSPX, 2017 WL 1294004, at *4 (C.D. Cal. Mar. 20, 2017); Cal. Code Civ. Proc. § 3294(b).  Courts in this District routinely dismiss punitive damages requests on such grounds.  *See, e.g.*, *US Distressed Mortg. Fund, LLC v. Wells Fargo Bank, N.A.*, No. C 13-05177-LB, 2014 WL 4370810, at *10 (N.D. Cal. Sept. 3, 2014) ("The allegations refer to the actions of Wells Fargo, without distinguishing between the corporation, acts of officers, directors, or managing agents, and acts of their employees. That is not enough."); *Bridge v. E*Trade Sec. LLC*, No. C-11-2521 EMC, 2011 WL 5444266, at *11 (N.D. Cal. Nov. 9, 2011) ("Plaintiffs have failed to allege sufficient facts indicating that Defendant ratified the fraud committed by Defendant's employees, or that . . . other employees to whom Plaintiffs spoke were acting in a managerial capacity"); *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *6 (N.D. Cal. May 31, 2011) (dismissing punitive damages claim where "Plaintiffs have not alleged a single fact tending to show that any officer, director, or managing agent took any action amounting to authorization or ratification of the alleged misconduct or had knowledge of the unfitness of any employee"); *McMurray v. Merck & Co.*, Case No. 071007, 2007 WL 1456042, at *2 (N.D. Cal. May 17, 2007) (dismissing punitive damages request where plaintiff "failed to plead the allegedly wrongful conduct was authorized or ratified by an officer, director or managing agent of defendant"); *Ayat v. Societe Air France*, No. C 06-01574JSW, 2007 WL 1100315, at *3 (N.D. Cal. Apr. 11, 2007) (dismissing punitive damages request because "corporations are only liable for punitive damages if the corporate leaders acted with the requisite intent").

claim that alleged in conclusory fashion that the manufacturer knew of the alleged car defect but failed to disclose it).

Uber's Complaint fails to plead with specificity how Fetch knew any alleged representations were false at the time they were made.    For example, the Complaint fails to plead a single fact showing that Fetch knew that the data provided to it by third party Tune, which Fetch then repackaged for Uber, was inaccurate.  Complaint ¶ 42, *see also id.* ¶¶43-54.  Instead, Uber conclusively asserts that "Fetch's representations were false and Fetch knew as much at the time they were made.  In the alternative, Fetch made such representations to Uber recklessly and without regard for the truth." Complaint ¶ 112.  Such threadbare and boilerplate allegations are insufficient to sustain fraud claims. *See Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324,  1331 (Cal. Ct. App. 1986) (plaintiff did not state a cause of action for fraud because it failed to plead with specificity a factual basis as to how the defendant knew the representations she made were false).

Courts routinely dismiss fraud claims at the pleading stage where the plaintiff has failed to plead knowledge of falsity with specificity.  For example, in *Tsai v. Wang*, No. 17-CV-00614-DMR, 2017 WL 2587929 (N.D. Cal. June 14, 2017), the defendant agreed to buy wines on behalf of the plaintiff as the plaintiff's agent.  *Id.* at *1.  The plaintiff later alleged that the defendant delivered counterfeit wines that were falsely labelled as expensive wines, causing the plaintiff to overpay.  *Id.* at *2.  The plaintiff specifically alleged that the defendant supplied four falsely labeled 1990 Henry Jayer Vosne-Romanee 1st Cru Cros Parantoux bottles of wine.  *Id.*  Based on these facts, the court found the fraud claim insufficiently alleged knowledge of falsity, because no inference that the defendant knew the wines were fake could be drawn from those facts.  *Id.* at *3.

### 3.  The negligent misrepresentation allegations fail to plead with specificity that Fetch lacked reasonable grounds for believing any representations were true

For Uber's negligent misrepresentation claim to survive, Uber must plead with particularity that Fetch made a misrepresentation of past or existing material fact "without reasonable ground for believing it to be true."  *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001) (elements of a negligent misrepresentation claim).  Uber's allegations do not meet this standard.

Uber asserts, in conclusory fashion, that "Fetch made a number of false statements set forth above, that were made without reasonable grounds for believing them to be true when made, and such statements were false."  Complaint ¶ 119.  That is all.  Uber's Complaint does not identify a single specific representation made by Fetch that it contends Fetch made without reasonable grounds.

Further, review of Uber's allegations shows why Uber cannot identify any statements in this category.  For example, Uber's Complaint has an extensive, albeit generalized, discussion about Tune data and transparency reports Fetch provided Uber based on the Tune data.  Complaint ¶¶ 42-54, 59-62, 64-71.  But Uber cannot identify any transparency report sent to Uber, or other alleged representation by Fetch to Uber, that Fetch communicated "without reasonable ground for believing [them] to be true."  *Glenn K. Jackson Inc.*, 273 F.3d at 1200 n.2.  Uber's highly generalized allegations are insufficient to sustain a claim for negligent misrepresentation.  *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1112 (C.D. Cal. 2015) (finding that plaintiffs did not adequately allege a California-law claim for negligent misrepresentation by offering general allegations that defendants had no reasonable grounds for believing that the statements were true when made).

### 4.   Uber cannot adequately allege justifiable reliance

Uber also has failed to plead facts supporting any plausible assertion of justifiable reliance.  *See Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (1991) ("[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.").  To assert justifiable reliance, Uber must show the circumstances were such that Uber could reasonably accept Fetch's statements about ad fraud (whatever they may have been) without any independent inquiry or investigation.  *Wilhelm*, 186 Cal. App. 3d at 1332.  Uber's allegations regarding reliance must be plead with particularity.  *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL 4220824, at *6 (N.D. Cal. Aug. 22, 2014) ("Plaintiff must plead reasonable reliance on alleged misstatements with particularity by alleging facts 'of sufficient specificity,' allowing a court to infer that 'misrepresentations caused injury to plaintiff'"); *Noll v. eBay, Inc.*, 282 F.R.D. 462, 468 (N.D. Cal. 2012).

However, Uber admits that it:

- had access to the same information as Fetch (Complaint ¶¶ 42 ("Fetch **and Uber** utiliz[ed] a third party mobile analytics and performance marketing platform"), Ex. A § 6.3 (███████████████████████████);

- ████████████████████████████████████████████████████████ (Complaint ¶ 58, Ex. A § 11.13), and

- knew that the mobile advertising industry was impacted by certain levels of ad fraud (Complaint ¶¶ 58, 63, 72, Ex. E ¶ 4 (█████████████████████████████).

Given these admissions, and the lack of any alleged facts that suggest that Uber believed the mobile advertisers it was using to acquire users were free of problems, Uber cannot meet the standard for pleading justifiable reliance (even if it could identify a statement on which it supposedly relied), and its fraud-based claims should therefore be dismissed. *Ostayan v. Serrano Reconveyance Co.*, 77 Cal. App. 4th 1411, 1419 (2000) ("Whether it be a cause of action for intentional or negligent misrepresentation, a plaintiff must demonstrate that he or she actually and reasonably relied upon a representation made by the defendant.").

**D.** **Uber's Ordinary Negligence and Professional Negligence Claims Should Be Dismissed Because There Is No Independent Tort Law Duty Supporting These Claims**

Uber's negligence and professional negligence claims all derive from the allegation that Fetch was negligent in discharging its duties in assisting Uber with mobile media advertising. However, because those duties fall within the terms of the parties' Agreement, and because there is no claim for "negligent performance of contract," these claims should be dismissed.

California law allows contract claims and tort claims based on the same conduct only when the acts complained of violate independent duties. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law. . . . An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty."); *Erlich v. Menezes*, 21 Cal. 4th 543, 551-53 (1999). Whether a defendant owes a tort law duty of care that can support a negligence claim is a question of law resolvable on the pleadings. *Id.* at 552.

1    The allegations underlying Uber's negligence claims all arise from the mobile media campaign

2    Agreement between the parties, and in particular Section 2.3, ███████████████:

3    

4    

5    

6    

7    

8    Complaint, Ex. A § 2.3 (emphasis added).  Uber's negligence claims do nothing more than re-state the

9    claim that Fetch failed to comply with Section 2.3 of the parties' Agreement.  *See, e.g.*, Complaint ¶

10   129 ("Fetch had the duty, as a professional in the advertising industry, to use such skill, prudence, and

11   diligence that other members of the profession commonly possess and exercise . . . ); *id.* ¶ 136 ("Fetch

12   had a duty to use such skill, prudence, and diligence as a reasonable mobile advertising agency . . . .").

13   There is no independent tort law duty, beyond the contractual requirement of Section 2.3, that would

14   require Fetch to prevent third-party suppliers from engaging in ad fraud or re-brokering.

15   In determining whether a plaintiff has a tort or contract cause of action, the key factor is the

16   source of the duty forming the basis of the claim.  *See Erlich* , 21 Cal. 4th  at 551-53.  If the duty

17   flows from a contract (i.e., a duty voluntarily assumed through the parties' bargaining and

18   memorialized in a written agreement), the defendant generally cannot be liable in tort.  *See Oracle*

19   *USA, Inc. v. XL Glob. Servs., Inc.*, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009) ("[T]he

20   fundamental rule in California is that no tort cause of action will lie where the breach of duty is

21   nothing more than a violation of a promise which undermines the expectations of the parties to an

22   agreement."); *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 81-82 (1993) ("[O]ur Supreme Court

23   [of California] has advised against judicial activism where an extension of tort remedies is sought for

24   a duty whose breach previously has been compensable by contract remedies.").

25   Here, the source of Fetch's duty to act "███████████████████████████

26   ███████████████████████" is a term of the parties' contract; it cannot support independent tort

27   claims.

28   Because Uber cannot convert an alleged breach of Section 2.3 of the Agreement into two

1   separate tort causes of action, its negligence-related claims should be dismissed.

2   **E.      Uber's Unfair Competition Claim Should Be Dismissed**

3   To state a claim under the unfair competition law (Cal. Bus. & Prof. Code, § 17200 *et seq.*), a

4   plaintiff must establish that the defendant's business practice is "either unlawful (i.e., is forbidden by

5   law), unfair (i.e., harm to victim outweighs any benefit), or fraudulent (i.e., is likely to deceive

6   members of the public)."  *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206

7   (2003).  Uber cannot satisfy any of these three prongs of California's unfair competition law.

8   **1.      Because Fetch did not break any underlying law, there is no unlawful**

9   **practices claim**

10  Uber's allegations of breach of contract do not plausibly allege a violation of Section 17200

11  under the "unlawful" prong.  "[A] violation of another law is a predicate for stating a cause of action

12  under" Section 17200's unlawful practices prong.  *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.

13  App. 4th 1544, 1554 (2007); *see Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163,

14  180 (1999) ("[S]ection 17200 'borrows' violations of other laws and treats them as unlawful practices

15  that the unfair competition law makes independently actionable.").

16  Uber cannot state a claim under the unlawful prong of Section 17200 because it can allege no

17  statutory violations.  Even common law violations (and Fetch submits Uber has alleged none of those

18  either) are insufficient to support a Section 17200 claim.  *See Shroyer v. New Cingular Wireless*

19  *Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("Because Shroyer does not go beyond alleging a

20  violation of common law, he fails to state a claim under the unlawful prong of § 17200."); *TreeFrog*

21  *Developments, Inc. v. Seidio, Inc.*, No. 13CV0158-IEG KSC, 2013 WL 4028096, at *5 (S.D. Cal.

22  Aug. 6, 2013); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074-75 (C.D.

23  Cal. 2003) (rejecting plaintiff's argument that pleading a common law violation can support a § 17200

24  claim without any alleged statutory violation).

25  Uber's contract-based claims cannot qualify as the predicate unlawful conduct.  "A breach of

26  contract, and by extension, a breach of the implied covenant of good faith and fair dealing, is not itself

27  an unlawful act for purposes of the UCL. . . .  'Contractual duties are voluntarily undertaken by the

28  parties to the contract, not imposed by state or federal law.'"  *Boland, Inc. v. Rolf C. Hagen (USA)*

*Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010); *see also Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 859 (N.D. Cal. 2012) ("an alleged breach of a warranty – a contract – 'is not itself an unlawful act under the UCL'"); *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1088 (C.D. Cal. 2017) ("Plaintiff's Section 17200 allegations concern the parties' contractual duties; but these common-law contractual duties are not the state or federal law violations that [S]ection 17200 concerns").  Uber's remaining seven common law causes of action would also not qualify because they are inadequately pled.  *See generally Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1010–11 (N.D. Cal. 2016) ("Where the UCL claim is premised on the same acts alleged in the complaint's other causes of action, and those causes of action fail, the UCL claim likewise must be dismissed").

## 2.    Uber ignores the threshold requirements for a claim based on unfair practices

Uber does not, and cannot, show that its allegations are directly connected to a legislatively declared policy or threaten competition, a threshold requirement to state a claim under the "unfair" prong of section 17200.

Historically, to plead a claim based on an "unfair" practice, a plaintiff had to allege facts showing the "unfair" nature of the conduct and that the harm it caused outweighed any benefits that the conduct may have.  *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980).  More recently, courts have followed a line of authority that requires a threshold showing that "the allegedly unfair business practice be 'tethered' to a legislatively declared policy or ha[ve] some actual or threatened impact on competition."  *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 991 (2008) (citing *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239-40 (2007)).

Here, Uber cannot allege that Fetch's performance under its mobile advertising contract is tethered to a legislative policy or threatens competition.  A breach of contract claim cannot be transformed into a Section 17200 claim just because the plaintiff thinks the perceived breach was "unfair."

## 3.    Uber cannot meet the heightened pleading standard required to allege fraudulent practices

The third prong of Section 17200 also cannot be satisfied because Uber has failed to plead

1    with particularity that Fetch engaged in fraudulent practices likely to deceive or mislead any identified

2    set of consumers.[4]

3            A proper allegation of fraudulent practices under Section 17200 "requires a showing [that]

4    members of the public 'are likely to be deceived.'"  *Shroyer*, 622 F.3d at 1044.  Such deception is

5    measured by whether an "ordinary consumer acting reasonably under the circumstances" is "likely" to

6    be misled by the defendant's materials.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 512

7    (2003); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260 (C.D. Cal. 2003).

8            Uber cannot identify a target set of consumers affected by Fetch's alleged contract breaches

9    and cannot explain how Fetch's alleged practices are likely to deceive any consumers at all.  This is

10   grounds for dismissal.  *See Lavie*, 105 Cal. App. 4th at 512; *Hadley v. Kellogg Sales Co.*, 243 F. Supp.

11   3d 1074, 1099 (N.D. Cal. 2017).  Further, as noted above, Uber has also failed to identify the who,

12   what, when, where, and how of any conduct alleged to be deceptive.  *See Vess*, 317 F. 3d at 1106;

13   *Edelman*, 2009 WL 1285858, at *3 (dismissing claim where it did not allege "what the misstatements

14   were, who uttered the misstatements, or when they were uttered").  Because Uber cannot satisfy any

15   prong, its Section 17200 claim must be dismissed.

16       **F.    <u>An Unjust Enrichment Claim Is Not Available Where an Express Agreement</u>**

17              **<u>Covers the Parties' Relationship</u>**

18           Uber's unjust enrichment claim is also barred in light of Uber's remaining breach of contract

19   claim, and therefore must be dismissed.  Unjust enrichment is not available where an express legal

20   contract governs the rights and obligations of the parties.  *Neal v. Select Portfolio Servicing, Inc.*, No.

21   5:16-cv-04923-EJD, 2017 WL 4224871, at *6 (N.D. Cal. Sept. 22, 2017) (unjust enrichment claim

22   dismissed with prejudice because "Plaintiff cannot proceed on a quasi-contract theory because he

23   acknowledges the existence of an express contract"); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th

24   1342, 1388 (2012) ("A plaintiff may not . . . pursue or recover on a quasi-contract claim if the parties

25   have an enforceable agreement regarding a particular subject matter."); *Hedging Concepts, Inc. v.*

26   _____

27          [4]   Allegations of fraudulent conduct under Section 17200 must be asserted with particularity,
     including pleading the "who, what, when, where, and how" of the charged misconduct.  *Vess*, 317 F.
28   3d at 1106; *Edelman v. Bank of America Corp.*, 2009 WL 1285858, at *2-3 (CD. Cal. Apr. 17, 2009).

1    *First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1420 (1996).[5]

2        Uber's claim that Fetch was overpaid because it did not perform under its contract is a contract

3 claim, not some other, more creative theory.   The only way an unjust enrichment claim could proceed

4 in the face of a written agreement would be if Uber were to claim "that the express contract is void or

5 was rescinded,'"   *Daniel v. Wayans*, 8 Cal. App. 5th 367, 399 (2017), or if it set forth facts showing

6 the entire contract was procured by fraud.  *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762

7 (9th Cir. 2015) (plaintiff must plead that "a defendant has been unjustly conferred a benefit 'through

8 mistake, fraud, coercion, or request.'").  Because Uber's Complaint does not allege either, its unjust

9 enrichment claim should be dismissed.

10 **III.    LEAVE TO AMEND THE NON-CONTRACT CLAIMS WOULD BE FUTILE**

11        Uber should not be given leave to amend any of its non-contract claims because leave to

12 amend should not be granted when it is an exercise in futility.  *See Barber v. State of Hawai'i*, 42 F.3d

13 1185, 1198 (9th Cir. 1994).  Uber's own allegations make clear that they stand or fall with its contract

14 claim:  each of its other theories seeks to expand on, circumvent, or add improper remedies to the

15 parties' contractual rights and obligations, and cannot be maintained for that and other reasons.  It

16 would be a waste of resources to give Uber leave to replead its nine baseless tort or statutory causes of

17 action.  *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) (if "allegation[s] of other facts

18 consistent with the challenged pleading could not possibly cure" deficiencies, then dismissal with

19 prejudice is appropriate even if the Complaint has not been amended yet  (quoting *Schreiber Distrib.*

20 *Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986))); *United Guar. Mortg. Indem.*

21 *Co.*, 660 F. Supp. 2d at 1190 (whereas breach of contract claim survived, related attempts to assert tort

22 claims were dismissed without leave to amend).

23

24

25        [5] Some courts have also dismissed unjust enrichment claims as not stating a standalone cause of

26 action.  *Swearingen v. Santa Cruz Nat'l, Inc.*, No. 13-cv-04291-SI, 2016 WL 4382544, at *12 (N.D. Cal. Aug. 17, 2016) (unjust enrichment claim dismissed with prejudice because it "does not exist as a

27 standalone cause of action"); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust

28 enrichment is not a cause of action").

1

## <u>CONCLUSION</u>

2

Fetch respectfully requests that Causes of Action Two through Ten of Uber's Complaint be

3

dismissed, without leave to amend.

4

DATED:  December 18, 2017                     Respectfully submitted,

5

QUINN EMANUEL URQUHART & SULLIVAN, LLP

6

7

By  */s/ Harry A. Olivar, Jr.*

8

Harry A. Olivar, Jr.
*Attorney for Defendant*

9

*Fetch Media, Ltd.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FETCH'S MOTION TO DISMISS